IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARTHUR F. HEBBELER et al.,

   *Plaintiffs*,

   v.

FIRST MARINER BANK,

   *Defendant*.

Civil Action No. ELH-17-3641

## MEMORANDUM OPINION

Plaintiffs Arthur and Deborah Hebbeler have sued their mortgage lender, First Mariner Bank ("FMB" or the "Bank"), alleging, *inter alia*, breach of contract, fraud, and violations of state and federal laws in connection with a foreclosure proceeding on their home. ECF 2 (Complaint).[1] The Complaint contains nine counts against FMB: Violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code (2013 Repl. Vol., 2017 Supp.), §§ 13-101 *et seq*. of the Commercial Law Article ("C.L.") (Count I); Detrimenal [sic] Reliance (Count II); Breach of Contract (Count III); Negligence (Count IV); Unjust Enrichment (Count V); Violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*. (Count VI); Fraud (Count VII); Declaratory Judgment (Count VIII); and Injunctive Relief (Count IX). *See* ECF 2.

Pending before the Court is FMB's motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 13. The motion is supported by a memorandum of law (ECF 13-1)

---

[1] The case was originally filed in the Circuit Court for Baltimore City and was removed to this Court by defendant on the basis of a federal question. *See* ECF 1 (Notice of Removal); 28 U.S.C. §§ 1331, 1446. The Complaint in the State court had numerous attachments, but they were not transmitted to this Court when the case was removed. *See* ECF 15 ("Joint Line Adding Exhibits to Complaint"). Those exhibits are now filed at ECF 19.

(collectively, "Motion") and several exhibits. Plaintiffs oppose the Motion (ECF 14, "Opposition"), and submitted several additional exhibits. The Bank replied. ECF 17 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Factual and Procedural Background[2]

Plaintiffs allege that they obtained a mortgage from defendant in July 2002, secured by their home on Hilton Avenue in Catonsville, Maryland (the "Property"). ECF 2, ¶¶ 6-7; *see* ECF 19. In May 2015, plaintiffs and defendant entered into a Forbearance Agreement. ECF 2, ¶ 9; *see* ECF 19 ("Forbearance Agreement" or "Agreement"). According to the Forbearance Agreement, plaintiffs defaulted on their mortgage in 2012, and as of April 23, 2015, they were in arrears of $101,931.66. ECF 2, ¶ 9; ECF 19 at 2-3.

The Forbearance Agreement provided that FMB would forbear from foreclosing on the Property so long as plaintiffs complied with the terms of the Agreement. ECF 19 at 9. Among those terms was a payment schedule, which stated that plaintiffs were to pay $68,000 immediately; an additional $20,284.78 by May 29, 2015; and a further sum of $13,646.88 by August 1, 2015. ECF 2, ¶ 10; ECF 19 at 4. The Complaint alleges that these payment deadlines were merely "guidelines, and not material terms of the Agreement." ECF 2, ¶ 10. However, the Forbearance Agreement itself states that the "breach" of "any of the provisions of th[e] Agreement" shall be considered an "Event of Default," allowing FMB to "exercise any and all of its default rights and remedies . . . including . . . foreclosing on the Property." ECF 19 at 5-6. The Agreement also specifies that the "failure of [plaintiffs] to comply with . . . any of the

---

[2] In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). I shall also refer to facts supported by the exhibits submitted with the Complaint.

provisions of the Loan Documents" would constitute another "Event of Default." *Id.* at 5. The "Loan Documents," attached to the Motion by the Bank, specify that plaintiffs were required to make monthly payments of $2,936.71 on their mortgage. *See* ECF 13-8 ("Note") at 1; *see also* ECF 2, ¶ 23.

According to plaintiffs, "FMB's records suggest that from May 7, 2015 through August 15, 2015, [plaintiffs] paid a total of $97,984.78 under the Forbearance Agreement." ECF 2, ¶ 11. This would imply that plaintiffs were $3,946.88 short of the amount due under the Agreement. But, plaintiffs contend that "FMB failed to apply two crucial payments," totaling $4,300.00, which plaintiffs "hand delivered" to the Bank on May 8, 2015, and June 22, 2015. *Id.* ¶¶ 11-12. Plaintiffs maintain that the Bank failed to deposit their checks, and thus the payments were not applied under the Agreement. *Id.* ¶ 12. According to plaintiffs, had these payments been applied, they would have exceeded the payment amount due under the Forbearance Agreement. *Id.* ¶¶ 12-13, 18.

In the ensuing year, plaintiffs allege that they repeatedly contacted FMB to ask that the payments be applied to their account, and consistently maintained that defendant's accounting was incorrect. *Id.* ¶ 15. Plaintiffs further allege that "FMB's accounting was at times off by at least $25,000." *Id.* ¶ 16.

For example, on August 9, 2016, Mr. Hebbeler wrote to the Bank, asserting that FMB had failed to provide accurate accounting statements, and asking defendant "to come to a middle ground" by allowing plaintiffs to refinance the mortgage at a lower interest rate, applying all legal fees associated with plaintiffs' prior default towards the mortgage balance, and amending FMB's reporting to the credit bureaus to show plaintiffs in good standing for the prior three months. ECF 19-6 (email of August 9, 2016, from Mr. Hebbeler to FMB). Felipe A. Rojas,

FMB's representative, responded, stating: "Until you can provide evidence the Bank's accounting is incorrect we cannot come to a resolution of the outstanding principal, interest, escrow and fees. The Bank cannot assist you without confirming the balances owed." ECF 19-7 (email of August 23, 2016, from Rojas to Mr. Hebbeler). However, plaintiffs "refused to stipulate to the erroneous accounting." ECF 2, ¶ 20.

According to plaintiffs, their letters of inquiry to FMB constituted "qualified written requests" ("QWRs") under RESPA. ECF 2, ¶ 15. And, the Bank never responded, or responded inadequately, in violation of RESPA. *Id.*

On September 11, 2017, defendant allegedly commenced a foreclosure action against plaintiffs in the Circuit Court for Baltimore County. *Id.* ¶¶ 8, 22; ECF 19-8 (Notice of Intent to Foreclose). The Notice of Intent to Foreclose, dated February 2, 2017, stated that plaintiffs had defaulted on their mortgage on May 1, 2014, and that the most recent loan payment had been received on March 18, 2016. ECF 19-8 at 3. According to the Notice of Intent to Foreclose, the total amount required to cure the default as of February 2, 2017, was $76,415.60. *Id.*

Plaintiffs insist that "FMB clearly failed to apply funds paid by the homeowners toward the mortgage in the amount of at least one full year's worth of mortgage payments - $35,240.52." ECF 2, ¶ 25. As a result, plaintiffs allege that FMB "fraudulently embezzled over $35,240.52 in funds paid by the homeowners," which "shows that FMB never intended to keep its promises under the Forbearance Agreement." *Id.* ¶ 27. Further, plaintiffs allege that "FMB acted with actual malice." *Id.* ¶ 29. Consequently, plaintiffs maintain that they "have incurred economic damages in the form of damage to their credit ratings, and also in the amount of the funds fraudulently embezzled by FMB." *Id.* ¶ 30. And, plaintiffs further allege noneconomic damages in the form of mental anguish. *Id.* They seek compensatory and punitive damages. ECF 2 at 18.

## II.    Legal Standard

### A.  Choice of Law

Although this case involves principles of both state and federal law, neither party has addressed the matter of choice of law.  The law of the forum state, Maryland, guides the Court's choice-of-law analysis.  *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract.  *Am. Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995).  Both the Forbearance Agreement (ECF 19) and the underlying loan documents (ECF 13-2) appear to have been executed in Maryland.  And, the Property is located in Maryland.  Accordingly, I will apply Maryland law in addressing plaintiffs' contract claims.

For tort claims, Maryland applies the principle of *lex loci delicti,* i.e., the law of the "place of the alleged harm."  *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).  Given the Property's location, the alleged harm would have occurred in Maryland.  Accordingly, I will look to Maryland law with respect to the analysis of plaintiffs' claims sounding in tort.

In sum, except with respect to the issues of federal law that control plaintiff's RESPA claim, I will apply Maryland law.

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an

affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512-13 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004). To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602,

611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. "Accordingly, if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization." *Id.* at 166. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

As noted, plaintiffs attached numerous exhibits to the Complaint. *See* ECF 19 to ECF 19-8. And, defendant submitted several documents related to plaintiffs' mortgage. ECF 13-2 to

ECF 13-11.  To the extent these exhibits are integral to the Complaint, I may consider them, and I may do so without converting the Motion to one for summary judgment.  *See, e.g.*, *Goines*, 822 F.3d at 166.

## C.  Rule 9(b)

Plaintiffs allege two claims against FMB that sound in fraud: Count I, for Violations of the MCPA, and Count VII, for fraud.  As a preliminary matter, claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See, e.g.*, *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims."); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an MCPA claim that "sounds in fraud[] is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted).  In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'"  *Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

Rule 9(b) serves several salutary purposes:

First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . .  Second, Rule

9(b) exists to protect defendants from frivolous suits.  A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery.  Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

Notably, however, Rule 9(b) by its plain text permits general averment of aspects of fraud that relate to a defendant's state of mind.  And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Id.*  Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'"  *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

### III.    Discussion

In general, plaintiffs' suit seems to contain more causes of action than allegations.  It appears that the central disputes in the case are whether plaintiffs upheld their end of the Agreement, and whether the Bank maintained an accurate accounting of their mortgage payments.  From these two comparatively straightforward disputes, plaintiffs have constructed nine separate counts.  *See* ECF 2.  Several of these claims bear little relation to the facts that purportedly underlie them.  Nevertheless, I shall review each claim separately, mindful of the Rule 12(b)(6) standard.

## A. Count I – Violations of the MCPA

Plaintiffs allege that FMB violated the MCPA in its dealings with plaintiffs. The MCPA is "intended to provide minimum standards for the protection of consumers in the State." C.L. § 13-303(a); *see also Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140, 916 A.2d 257, 276 (2007). It is liberally construed in order to achieve its consumer protection objectives. *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citing *State v. Cottman Transmissions Sys., Inc.,* 86 Md. App. 714, 587 A.2d 1190, 1204 (1991)).

Among other things, it is unlawful under the MCPA for a person to use unfair or deceptive trade practices related to the extension of consumer credit or the collection of consumer debts. C.L. § 13-301; *see Piotrowski v. Wells Fargo Bank, N.A.*, DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013). C.L. § 13-301(1) defines unfair or deceptive trade practices as, *inter alia*: (1) "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" and (2) "Failure to state a material fact if the failure deceives or tends to deceive." *See Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266 (D. Md. 2011) (explaining that "the MCPA prohibits both the use of false or misleading statements and also the omission of material facts").

For both material misrepresentation and material omission claims under the MCPA, a party must prove reliance. *Bezmenova v. Ocwen Fin. Corp.*, AW-13-003, 2013 WL 3863948, at *5 (D. Md. July 23, 2013); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 533 (D. Md. 2011) (explaining that "[t]he requirement of reliance flows from the MCPA's prescription that the party's 'injury or loss' be 'the result of' the prohibited practice . . . ."). With respect to a material misrepresentation, "[a] consumer relies on a

misrepresentation when the misrepresentation substantially induces the consumer's choice." *Mitchell Living Trust*, 822 F. Supp. 2d at 533 (citations omitted). In contrast, "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Id.* at 535.

An individual bringing a private cause of action pursuant to the MCPA must establish an actual injury or loss sustained as a result of a prohibited practice. *See Marchese*, 917 F. Supp. 2d at 465; *see also Allen v. CitiMortgage, Inc.*, CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (explaining that under the MCPA "an individual may only bring a claim if she can 'establish the nature of the actual injury or loss that he or she allegedly sustained as a result of the prohibited practice'" (quoting *Lloyd*, 397 Md. at 148, 916 A.2d at 280)); *Lloyd,* 397 Md. at 143, 916 A.2d at 277 (concluding that a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation").

Plaintiffs allege that FMB used unfair or deceptive trade practices under C.L. § 13-301(1) when defendant "promised to apply the homeowners' payments under the Forbearance Agreement to the mortgage balance, and allow them to bring their account current by completing the Forbearance Agreement, even though it never had any intent of keeping the promises." ECF 2, ¶ 36. According to the Complaint, plaintiffs "relied on the statements by continuing to make payments and uphold their end of the bargain under the Forbearance Agreement." *Id.* ¶ 37. Plaintiffs insist, *id.*: "But for the deceptive communications, Plaintiffs would have saved their money by not making the Forbearance Agreement payments . . . ."

The MCPA claims sound in fraud, and are therefore subject to the heightened pleading requirements of Rule 9(b). *See Spaulding*, 714 F.3d at 781. Plaintiffs fail to identify a false or misleading statement by FMB. The Forbearance Agreement, which plaintiffs incorporated into their Complaint (ECF 19), contains no specific "promise to apply the homeowners' payments." Moreover, the Forbearance Agreement does not state that FMB would not foreclose if plaintiffs made the three indicated forbearance payments. Rather, it provides, ECF 19 at 4: "The Lender agrees to forbear from the exercise of its default rights and remedies under the Loan Documents until the occurrence of an Event of Default under this Agreement (the 'Forbearance Period)." As noted, the Agreement provides for several "Events of Default," including but not limited to the failure to make the forbearance payments, the failure to comply with the Loan Documents, and plaintiffs' declaration of bankruptcy. *See* ECF 19 at 4-5. There appears to be a dispute between the parties as to whether an Event of Default occurred. However, that claim sounds in contract rather than in tort.

Further, as a second part to plaintiffs' MCPA count, plaintiffs assert that FMB violated C.L. §§ 13-301(14)(iii) and 14-202(8) (part of the Maryland Consumer Debt Collection Act ("MCDCA")), which provide that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." C.L. § 14-202(8). According to plaintiffs, FMB violated these provisions when defendant allegedly demanded that plaintiffs stipulate to FMB's "inaccurate accounting," "refused" to accept plaintiffs' payments, filed a foreclosure action, and "embezzle[ed] funds." ECF 2, ¶ 38.

But, plaintiffs expressly acknowledged in the Forbearance Agreement that they were in arrears of over $100,000 on their mortgage. *See* ECF 19 at 3. And, the correspondence between plaintiffs and defendant's representative, which plaintiffs submitted with their Complaint, reveals

that FMB did not demand that plaintiffs "stipulate to a falsehood."  Rather, FMB's representative stated, ECF 19-7 at 2: "Until [plaintiffs] can provide evidence the Bank's accounting is incorrect we cannot come to a resolution of the outstanding principal, interest, escrow and fees.  The Bank cannot assist you without confirming the balances owed."  Plaintiffs have not plausibly alleged that FMB attempted to enforce a right with knowledge that the right did not exist.

The existence of plaintiffs' debt is undisputed.  Moreover, plaintiffs concede in their Complaint and the attachments thereto that they did not submit the final forbearance payment until after the agreed-on due date of August 1, 2015.  *See* ECF 2, ¶¶ 10 ("FMB continued to work with the homeowners . . . even though some payments were not made by the deadlines"); 11 (stating that FMB's records reflect a total of $97,984.78 paid from May 7, 2015 to August 15, 2015); *see also* ECF 19-3 at 3 (email from Mr. Hebbeler to Rojas, dated August 5, 2015, stating: "One [check] for the balance past due from the Forbearance" is "in today's mail to you.").  Therefore, by plaintiffs' own admission, plaintiffs were in breach of the Forbearance Agreement, albeit in a minor way.

As Judge Titus of this Court has previously stated, "the MCDCA allows for recovery against creditors that attempt to collect debts when there is no right to do so. It does not, as the Plaintiffs appear to contend, allow for recovery in errors or disputes in the process or procedure of collecting legitimate, undisputed debts."  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 770 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013).

Plaintiffs fall short of the heightened pleading requirement of Rule 9(b).  Unlike in *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013), on which plaintiffs rely, the Complaint identifies no fraudulent or misleading statements from FMB.  Therefore, this claim is subject to dismissal, without prejudice.

### B. Count II – Detrimental Reliance

Plaintiffs assert a claim for detrimental reliance, or promissory estoppel, alleging that they relied to their detriment on FMB's representations that it would honor the Forbearance Agreement. ECF 2, ¶¶ 41-48.

Promissory estoppel "is an alternative means of obtaining contractual relief." *Maryland Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc. v. Maryland Transp. Auth.,* 195 Md. App. 124, 215, 5 A.3d 1174, 1227 (2010), *rev'd on other grounds*, 420 Md. 141, 21 A.3d 1098 (2011); *see also Suburban Hosp., Inc. v. Sampson*, 807 F. Supp. 31, 33 (D. Md. 1992) (applying Maryland law and stating that "the nature of a lawsuit in which promissory estoppel is invoked remains that of an action to enforce a contract"); *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 169, 674 A.2d 521, 534 (1996) ("[T]here are different ways to prove that a contractual relationship exists . . . . Traditional bilateral contract theory is one. Detrimental reliance [a.k.a. promissory estoppel] can be another.").

The elements of a claim for promissory estoppel or detrimental reliance in Maryland were established in the touchstone case of *Pavel Enterprises, Inc.*, 342 Md. at 166, 674 A.2d at 532 (emphasis and footnote omitted):

1) a clear and definite promise;
2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
3) which does induce actual and reasonable action or forbearance by the promisee; and
4) causes a detriment which can only be avoided by the enforcement of the promise.

*Accord Citiroof Corp. v. Tech Contracting Co., Inc.*, 159 Md. App. 578, 589, 860 A.2d 425, 432 (2004); *Konover Prop. Trust, Inc. v. WHE Associates, Inc.*, 142 Md. App. 476, 484, 790 A.2d 720, 724 (2002).

In support of their claim, plaintiffs contend that the Forbearance Agreement constituted a clear and definite promise by defendant, that FMB did not honor the Agreement when it initiated the foreclosure action, and that plaintiffs were thereby harmed. ECF 2, ¶¶ 42-43, 47. As for the third element, plaintiffs assert that they relied on the Bank's promise by "continuing to make payments and uphold their end of the bargain under the Forbearance Agreement." *Id.* ¶ 37. Moreover, they assert that if FMB had not represented that it would honor the Agreement, plaintiffs "would have investigated other ways to save the home, such as through bankruptcy proceedings or other litigation." *Id.*

In the Motion, defendant asserts that plaintiffs cannot plausibly allege reliance on FMB's promises because they acknowledged that they owed the debt. ECF 13-1 at 22. However, FMB cites no authority for this conclusion. And, taking as true plaintiffs' allegations that they fully complied with the Forbearance Agreement (ECF 2, ¶ 37), plaintiffs state a plausible claim that they were induced to take reasonable action by the Bank, as promisee, and that the Bank failed to keep its promise not to foreclose. *See Allen*, 2011 WL 3425665, at *8 (plaintiffs stated a claim for promissory estoppel in alleging that they relinquished other available remedies); *cf. Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 343 (D. Md. 2012) ("The detrimental reliance of the promisee serves as a substitute for the missing contractual element, such as acceptance or consideration."). Therefore, the allegations are sufficient to allow the claim to proceed.

## C. Count III – Breach of Contract

Plaintiffs allege that FMB breached the Forbearance Agreement by initiating a foreclosure proceeding on the Property, even though plaintiffs had paid the amount required under the Agreement. ECF 2, ¶¶ 13, 50.[3]

Defendant moves to dismiss plaintiffs' claim for breach of contract on the ground that plaintiffs did not comply with the Forbearance Agreement. ECF 13-1 at 15. In support of this contention, FMB cites to plaintiffs' Complaint for the proposition that "some payments were not made by the deadlines." ECF 2, ¶ 10. Furthermore, FMB asserts that plaintiffs breached the Agreement by paying only $97,984.78 of the $101,931.66 they owed. ECF 13-1 at 16-17.

Moreover, the Bank maintains that even if plaintiffs had completed the forbearance payments, they subsequently stopped paying their regular installments on their mortgage. *Id.* at 17. According to defendant, "from March 2016 until the present, Plaintiffs have entirely failed to make any mortgage payments." *Id.* FMB cites a chart attached to an email written by Mr. Rojas, which plaintiffs submitted with their Complaint. ECF 19-1 at 6 ("Payment Chart"). The chart is undated, but it is attached to an email dated August 23, 2016. *Id.* at 2. FMB suggests that the Payment Chart shows plaintiffs did not make any payments after March 18, 2016, and that this failure to continue payments constitutes an Event of Default under the Forbearance Agreement. ECF 13-1 at 17.

---

[3] In the Complaint, plaintiffs allege that defendant breached the Forbearance Agreement "by embezzling funds, failing to apply the homeowners' payments to the mortgage balance, failing to permit the homeowners to complete the agreement via their final payments, failing to note the account as current, filing an unauthorized foreclosure action, and reporting the account as in default to the credit reporting agencies." ECF 2, ¶ 50. However, plaintiffs do not explain how any of these actions, other than the initiation of foreclosure, relates to the contract at issue. In their Opposition, they only defend the claim as it relates to the foreclosure.

The content of the Payment Chart may prove true. However, at this stage of the litigation, I cannot accept it as true, because plaintiffs did not submit it for its truth and it is not integral to the Complaint. *See Goines*, 822 F.3d at 167. Indeed, plaintiffs vigorously dispute defendant's accounting of their debts; the dispute forms the basis of this lawsuit. *See, e.g.*, ECF 19-1 at 3 (email dated August 9, 2016 from Mr. Hebbeler to Rojas, asserting that plaintiffs "are still waiting for an accurate statement"). And, nothing in the Complaint suggests that plaintiffs either made—or failed to make—monthly mortgage payments after August 2015, when they submitted their final payment under the Agreement.

Plaintiffs have alleged that they paid the amount required by the Forbearance Agreement (ECF 2, ¶ 13), and that FMB's institution of the foreclosure action violated the Agreement. *Id.* ¶ 22. It may well be the case that plaintiffs failed to comply with the Forbearance Agreement, but at this stage they have stated a claim for breach of contract. On this count, defendant's Motion shall be denied.

### D. Count IV – Negligence

Plaintiffs assert that the Bank owed them a duty of care, which it breached by making false statements, improperly processing plaintiffs' mortgage payments, embezzling plaintiffs' money, and reporting negative information about plaintiffs to credit reporting agencies. ECF 2, ¶ 53. In particular, plaintiffs emphasize that FMB negligently failed to deposit the two checks that plaintiffs hand-delivered to the Bank. *Id.*; ECF 14-1 at 5. According to the Complaint, plaintiffs incurred economic and noneconomic damages as a result of the Bank's negligence. ECF 2, ¶ 30.

"To prevail upon a claim of negligence, the plaintiff must show that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach." *Farasat v. Wells Fargo Bank,*

*N.A.*, 913 F. Supp. 2d 197, 207 (D. Md. 2012) (citing *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 642 A.2d 180, 188 (1994)).

"It is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 81 Md. App. 527, 568 A.2d 1134, 1138 (1990)). Thus, "[b]anks typically do not have a fiduciary duty to their customers." *Spaulding*, 714 F.3d at 778.

However, the calculus changes when a plaintiff and a defendant are in contractual privity, and their contractual relationship provides the basis of the alleged breach of duty. The standard under Maryland law for recognition of a tort duty in cases involving economic loss is drawn from the seminal case of *Jacques v. First National Bank of Maryland*, 307 Md. 527, 534-35, 515 A.2d 756, 759-60 (1986) (citations and footnote omitted):

> Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.

This doctrine is sometimes called the "economic loss rule." *See, e.g.*, *Farmers Bank of Md. v. Chicago Title Ins. Co.*, 163 Md. App. 158, 172, 877 A.3d 1145, 1153 (2005). And, in certain circumstances, judges of this Court have found a duty of care when the alleged negligence arises from an existing contractual relationship. *See, e.g.*, *Neal v. Residential Credit Sols., Inc.*, JKB-11-3707, 2013 WL 428675, at *5 (D. Md. Feb. 1, 2013).

In this instance, it is undisputed that the parties had a contractual relationship arising from the Forbearance Agreement. See ECF 2, ¶ 9. Moreover, plaintiffs have alleged that FMB was negligent with respect to that existing contract by failing to apply two of plaintiffs'

payments on the Agreement. *See id.* ¶ 12. These allegations give rise to a plausible claim of basic negligence on the part of the Bank, even without any inference of fiduciary responsibility. As a result, plaintiffs' negligence claim survives the Motion.

### E. Count V – Unjust Enrichment

Plaintiffs maintain that FMB was unjustly enriched when it sought to foreclose on the Property while retaining plaintiffs' payments under the Forbearance Agreement. ECF 2, ¶¶ 57-59. And, plaintiffs again suggest that defendant embezzled money from plaintiffs. *Id.* ¶ 59.

In Maryland, a claim of unjust enrichment is not based on contract. Rather, it is based on quasi-contract. *Alternatives Unlimited, Inc. v. New Baltimore City Board of School Commr's*, 155 Md. App. 415, 472, 843 A.2d 252, 286 (2004). A claim of unjust enrichment is established when: "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 389 Md. 615, 651-52, 887 A.2d 525, 546 (2005) (citation omitted); *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343, 351 (2007); *Cnty. Comm'rs of Caroline Cnty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7, 747 A.2d 600, 607 n.7 (2000); *Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 574, 952 A.2d 304, 327, *cert. denied*, 406 Md. 444, 959 A.2d 793 (2008); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792-93 (D. Md. 2002).

Unjust enrichment is a remedy "'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *Dashiell*, 358 Md. at 96-97, 747 A.2d at 607 (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998)). "The general rule is that no quasi-contractual

claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Id.* at 96, 747 A.2d at 607; *see Janusz v. Gilliam*, 404 Md. 524, 537, 947 A.2d 560, 567 (2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties.") (internal quotation marks omitted); *see also FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.").

Defendant argues that plaintiffs may not assert a claim for unjust enrichment because they also assert a claim for breach of the Forbearance Agreement. ECF 13-1 at 22-23. However, although a plaintiff "may not recover under both contract and quasi-contract theories, [he] is not barred from pleading these theories in the alternative." *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 792. Plaintiffs' claim for unjust enrichment may be brought in the alternative to their contract claim. Thus, this argument is unavailing.

The Bank also argues that plaintiffs' unjust enrichment claim fails as a matter of law because plaintiffs "actually acknowledged in the Forbearance Agreement that they owed FMB all of the money that they paid under their loan documents." ECF 13-1 at 22. But, defendant ignores plaintiffs' assertion that FMB misappropriated $35,240.52 of plaintiffs' money by accepting the payments and failing to apply them to the mortgage balance. ECF 2, ¶¶ 25, 59. Taking this allegation as true, as I must at this early stage, these assertions state a claim for unjust enrichment.

## F.  Count VI – Violations of RESPA

Plaintiffs allege that FMB violated RESPA by failing to properly acknowledge and respond to a number of communications plaintiffs sent over the course of eighteen months.  ECF 2, ¶ 15.

Congress enacted RESPA in order "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [mortgage loan] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ."  12 U.S.C. § 2601.  Among other provisions, RESPA requires a mortgage servicer to respond to a borrower's "qualified written request" ("QWR").  *See* 12 U.S.C. § 2605(e)(1)(A), (B).

A QWR consists of written correspondence from a borrower that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower", and "(ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

"[A]fter the receipt from any borrower" of a QWR, *id.* § 2605(e)(2), a mortgage servicer is required to, *id.*:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

A mortgage servicer must provide the borrower with a written response acknowledging receipt of the correspondence within five days (excluding legal public holidays, Saturdays, and Sundays). 12 U.S.C. § 2605(e)(1)(A). And, mortgage servicers have only thirty days (excluding public holidays, Saturdays, and Sundays) to take action on the inquiry. *Id.* § 2605(e)(2). Mortgage servicers can obtain a fifteen-day extension "if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." *Id.* A servicer's failure to respond to a QWR as required entitles a borrower to recover actual damages, as well as statutory damages in cases showing a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f).

"In order to state a claim for a violation of RESPA's QWR provisions, the borrower must demonstrate (1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *IAR Family Trust v. Suntrust Mortgage, Inc.*, 3:13-CV-418-GCM, 2014 WL 1432378, at *3 (W.D.N.C. Apr. 14, 2014).

According to the Complaint, plaintiffs sent emails to FMB on August 4, 2015; August 5, 2015; August 18, 2015; August 24, 2015; September 22, 2015; October 2, 2015; November 3,

2015; March 19, 2016; May 16, 2016; and August 9, 2016.  ECF 2, ¶ 15.  And, plaintiffs sent letters to the Bank on October 25, 2016; November 21, 2016; and February 24, 2017.  *Id.* Plaintiffs attached these communications to their Complaint.  *See* ECF 19-1 to ECF 19-7.

Plaintiffs maintain that FMB did not acknowledge their emails or letters within five days, as required.  ECF 2, ¶ 15.3.  Furthermore, plaintiffs allege that FMB "never made any appropriate corrections to the homeowners' account, let alone within thirty days after receipt" of any of the correspondence.  *Id.* ¶ 15.4.  When FMB did respond and provide "some basis" for its accounting, plaintiffs assert that it did not do so within 30 days.  *Id.* ¶ 15.5.

The Bank has moved to dismiss this claim on the ground that none of these communications constitutes a QWR under RESPA.  ECF 13-1 at 26-28.  According to defendant, the emails and letters do not provide sufficient detail regarding information sought by plaintiffs, nor do they identify a particular dispute related to the mortgage.  *Id.*

Although several of plaintiffs' emails do not constitute QWRs (*see, e.g.*, ECF 19-3 at 8, email dated September 22, 2015, from Mr. Hebbeler to Rojas), certain of them appear to "include[] a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." For example, in plaintiffs' email of November 3, 2015, Mr. Hebbeler wrote, ECF 19-3 at 10: "The November 1 statement is closer but still off by at least[] $25000 that was wired from my sister back in May.  Also, interest and late fees were not properly assessed between May and October for payments made and not properly credited."  This email adequately raises a specific issue and identifies a requested correction.  Plaintiffs allege that FMB did not respond to this particular email until March 19, 2016 (ECF 2, ¶ 15), more than 120 days later, and further state

that "FMB never made any appropriate corrections to the homeowners' account." *Id.* ¶ 15.4. Defendant does not address this request or explain why it does not qualify as a QWR.

Therefore, I am satisfied that plaintiffs have adequately alleged that they submitted at least one QWR to defendant, and that defendant did not timely acknowledge or respond to it. As for the other correspondence, at this juncture I shall not review plaintiffs' emails and letters one by one to assess whether each of them qualifies as a QWR when defendant itself has declined to do so. Accordingly, I conclude that plaintiff has stated a claim for RESPA violations.

### G. Count VII – Fraud

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). Regardless of the particular theory, the plaintiff must establish the elements of fraud "by clear and convincing evidence." *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).

In an action for fraudulent misrepresentation, which is the garden variety of fraud and often is described simply as "fraud," the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
>
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
>
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
>
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
>
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S&R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex,*

*Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). The "misrepresentation must be made with the deliberate intent to deceive," *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)), and the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995).

A "defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 197, 665 A.2d 1038, 1048 (1995) (citations omitted). And, a "speaker's statement of what he or she will do in the future may constitute a representation of the speaker's present intention, which may support an action for negligent misrepresentation." *Gross*, 332 Md. at 272, 630 A.2d at 1169 (citing *Weisman v. Conners*, 312 Md. 428, 454-58, 540 A.2d 783, 796 (1988)).

Plaintiffs' claim for fraud relies on the same allegations as their claim under the MCPA. *See* ECF 2, ¶ 68. Once again, plaintiffs have failed to meet the heightened pleading standard of Rule 9(b). Accordingly, for the same reasons that Count I is subject to dismissal, I shall dismiss Count VII.

## H. Counts VIII & IX

Plaintiffs seek a declaratory judgment "articulating Defendant's obligations," as well as an injunction against defendant's foreclosure action. ECF 2, ¶¶ 78, 81. Defendant moves to

dismiss counts VIII and IX, for a declaratory judgment and injunctive relief, on the basis of the Anti-Injunction Act, 28 U.S.C. § 2283, and the doctrine of prior exclusive jurisdiction. ECF 13-1 at 30-31. Defendant contends that these claims are not viable because the Circuit Court for Baltimore County has jurisdiction over the foreclosure action. *Id.* at 31; *see Hartman v. Hebbeler et al.*, No. 03-C-17-008945 (Cir. Ct. Balto. Cnty).

Plaintiffs agree that these claims cannot be pursued in this Court, now that the case has been removed, and they consent to the dismissal of counts VIII and IX. ECF 14 at 17. Accordingly, they shall be dismissed.

## IV. Conclusion

For the reasons stated above, I shall GRANT defendant's Motion in part and DENY it in part. Counts I, VII, VIII, and IX shall be dismissed. Counts II, III, IV, V, and VI shall remain.

An Order follows, consistent with this Memorandum Opinion.


Date:  August 10, 2018

_____/s/_____
Ellen Lipton Hollander
United States District Judge