ARTHUR F. HEBBELER, *et al.*
*Plaintiffs,*

v.

Civil Case No. ELH-17-3641

FIRST MARINER BANK,
*Defendant.*

\*\*\*\*\*\*\*\*

## MEMORANDUM

Plaintiffs Arthur and Deborah Hebbeler (together, the "Hebbelers") have sued their mortgage lender, First Mariner Bank ("FMB" or the "Bank"), alleging breach of contract, fraud, and violations of state and federal laws in connection with a foreclosure proceeding on their home. ECF 2 (the "Complaint").[1] The Complaint initially contained nine counts against FMB: Violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code (2013 Repl. Vol., 2018 Supp.), §§ 13-101 *et seq.* of the Commercial Law Article ("C.L.") (Count I); Detrimenal [sic] Reliance (Count II); Breach of Contract (Count III); Negligence (Count IV); Unjust Enrichment (Count V); Violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. (Count VI); Fraud (Count VII); Declaratory Judgment (Count VIII); and Injunctive Relief (Count IX). *See* ECF 2.

---

[1] Suit was instituted in the Circuit Court for Baltimore City and was removed to this Court by defendant on the basis of a federal question. *See* ECF 1 (Notice of Removal); 28 U.S.C. §§ 1331, 1446. The Complaint in the State court had numerous attachments, but they were not transmitted to this Court at the time of removal. *See* ECF 15 ("Joint Line Adding Exhibits to Complaint"). Those exhibits are now docketed at ECF 19.

In a Memorandum Opinion (ECF 20) and Order (ECF 21) of August 10, 2015, the Court granted in part and denied in part the Bank's motion to dismiss. *See* ECF 13 (Motion). In particular, the Court dismissed Counts I, VII, VIII, and IX.

Thereafter, the Bank filed an Answer (ECF 22) to the Complaint. The Answer contains several "negative defenses" and numerous "affirmative defenses." *Id.* at 11-13.

Pending before the Court is FMB's "Motion to Amend Answer and to Assert Counterclaims and Cross Claim" (ECF 27, the "Motion"), filed on January 10, 2019. FMB moves for leave to amend its Answer ("Amended Answer") and to assert five counterclaims against the Hebbelers, as well as a cross claim against the United States Small Business Administration ("SBA"), for declaratory relief (collectively, the "Counterclaim"). ECF 27-1.

The Amended Answer proposes two new affirmative defenses: fraud ("SEVENTEENTH AFFIRMATIVE DEFENSE") and unclean hands ("EIGHTEENTH AFFIRMATIVE DEFENSE"). ECF 27-1 at 13. The Counterclaim asserts four counts against the Hebbelers: fraud (Count I); tortious interference with economic relationships (Count II); breach of contract (Count III); and unjust enrichment (Count IV). And, in Count V, FMB seeks declaratory relief against the Hebbelers and the SBA.[2]

Plaintiffs oppose the Motion (ECF 28), contending that the proposed amendments are "futile." ECF 28-1 at 3-4. The Bank has replied (ECF 29) and has provided six exhibits. ECF 29-1 - ECF 29-6.

---

[2] FMB "requests that the SBA be identified as a third party defendant for purposes of declaratory relief only." ECF 27, ¶ 12. FMB explains that it "had initial discussions with legal counsel at SBA" in December 2018, but was "unable to obtain consent from the SBA to be named as a defendant because the SBA's legal counsel [could] not work due to the shutdown of the federal government" from December 22, 2018, to January 25, 2019. *Id.*

2

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall grant the Motion (ECF 27).

## I. Factual and Procedural Background

As noted, plaintiffs filed the instant suit in the Circuit Court for Baltimore City on November 1, 2017. ECF 2. On December 7, 2017, FMB removed the case to this Court, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. ECF 1.

Plaintiffs allege that they obtained a mortgage from defendant in July 2002, secured by their home on Hilton Avenue in Catonsville, Maryland (the "Property"). ECF 2, ¶¶ 6-7; *see* ECF 19. In May 2015, plaintiffs and defendant entered into a Forbearance Agreement. ECF 2, ¶ 9; *see* ECF 19 ("Forbearance Agreement" or "Agreement"). According to the Forbearance Agreement, plaintiffs defaulted on their mortgage in 2012 and, as of April 23, 2015, they were in arrears of $101,931.66. ECF 2, ¶ 9; ECF 19 at 2-3.

The Forbearance Agreement provided that FMB would forbear from foreclosing on the Property so long as plaintiffs complied with the terms of the Agreement. ECF 19 at 9. Among those terms was a payment schedule, which stated that plaintiffs were to pay $68,000 immediately; an additional $20,284.78 by May 29, 2015; and a further sum of $13,646.88 by August 1, 2015. ECF 2, ¶ 10; ECF 19 at 4. The Complaint alleges that these payment deadlines were merely "guidelines, and not material terms of the Agreement." ECF 2, ¶ 10. However, the Forbearance Agreement itself states that the "breach" of "any of the provisions of th[e] Agreement" shall be considered an "Event of Default," allowing FMB to "exercise any and all of its default rights and remedies . . . including . . . foreclosing on the Property." ECF 19 at 5-6. The Agreement also specifies that the "failure of [plaintiffs] to comply with . . . any of the provisions of the Loan Documents" would constitute another "Event of Default." *Id.* at 5. The plaintiffs were required

3

to make monthly payments of $2,936.71 on their mortgage. *See* ECF 13-8 ("Note") at 1; *see also* ECF 2, ¶ 23.

According to plaintiffs, "FMB's records suggest that from May 7, 2015 through August 15, 2015, [plaintiffs] paid a total of $97,984.78 under the Forbearance Agreement." ECF 2, ¶ 11. This would imply that plaintiffs were $3,946.88 short of the amount due under the Agreement. But, plaintiffs contend that "FMB failed to apply two crucial payments," totaling $4,300.00, which plaintiffs "hand delivered" to the Bank on May 8, 2015, and June 22, 2015. *Id.* ¶¶ 11-12. Plaintiffs maintain that the Bank failed to deposit their checks, and thus the payments were not applied under the Agreement. *Id.* ¶ 12. According to plaintiffs, had these payments been applied, they would have exceeded the payment amount due under the Forbearance Agreement. *Id.* ¶¶ 12-13, 18.

In the ensuing year, plaintiffs allege that they repeatedly contacted FMB to ask that the payments be applied to their account, and consistently maintained that defendant's accounting was incorrect. *Id.* ¶ 15. Plaintiffs further allege that "FMB's accounting was at times off by at least $25,000." *Id.* ¶ 16.

On January 26, 2018, the Bank moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 13. As noted, in a Memorandum Opinion (ECF 20) and Order (ECF 21) of August 10, 2018, I granted the motion with respect to Counts I, VII, VIII, and IX. Counts II, III, IV, and V remain. *See* ECF 21.

The Court held a telephone conference with counsel on October 10, 2018. *See* ECF 23; ECF 24. On the same date, the Court issued a Scheduling Order (ECF 24), which set a deadline of January 11, 2019, for joinder of additional parties and amendment of pleadings. On January 10, 2019, one day prior to the deadline, the Bank moved for leave to file the Amended Answer, counterclaims, and cross claim (ECF 27).

4

The Bank alleges in its proposed Counterclaim that, on or about September 11, 2017, "the Bank filed its third foreclosure action against the Hebbelers" in the Circuit Court for Baltimore County, seeking repossession of the Property. ECF 27-1, ¶ 1.[3] The Hebbelers "vigorously contested the foreclosure," but the State court "found against them and ordered the Property to be sold at a foreclosure sale." *Id.* And, on March 13, 2018, Jeff Rhyne and Melinda Bunnell-Rhynes (the "Rhynes") "bought the Property at a foreclosure sale." *Id.* ¶ 2. In April 2018, the "Hebbelers filed objections to this sale in the Circuit Court for Baltimore County . . . ." *Id.* That court ratified the sale on or about October 29, 2018. *Id.*

According to the Bank, during this period, the Hebbelers "continued to reside in the Property without paying" the mortgage. *Id.* ¶ 3. Further, the couple "made affirmative representations to third party lenders that they owned the Property so they could obtain funds from purported equity in the Property which they did not own." *Id.*

In particular, "the Hebbelers obtained a loan from the SBA in the sum of $106,400.00 based on the false representations that they owned the Property." *Id.* ¶ 4. Further, the Bank asserts that "the Hebbelers executed a materially false deed of trust related to this loan from the SBA on November 5, 2018, after the court had affirmed the ratification of the sale of the Property to the Rhynes." *Id.* (citing ECF 27-1 at 20-29, "Deed of Trust"). In the Deed of Trust, dated November 5, 2018, "the Hebbelers affirmatively represent that they are the owners of the Property and that no other party has ownership rights related to the Property." *Id.* ¶ 9. According to the Counterclaim, this representation "is false and untrue and was made by the Hebbelers with actual knowledge of the falsity of these statements." *Id.*

---

[3] The proposed Amended Answer and proposed Counterclaim (ECF 27-1) have duplicate numbered paragraphs. In the factual background, I cite only to paragraphs in the Counterclaim.

In addition, the Counterclaim alleges that FMB "has suffered damages from these misrepresentations because the Hebbelers' actions have created perceived clouds on title and have delayed the eviction of the Hebbelers and the ability of the Rhynes to obtain possession of the Property." *Id.* ¶ 10. In addition, the Bank contends that plaintiffs have "taken actions which have breached their contracts with the Bank." *Id.* ¶ 19. In these contracts, the Hebbelers allegedly "represented that they would not make misrepresentations related to the ownership of the Property, not seek additional loans related to the Property under false pretenses and not engage in fraud concerning the Property or related to the Property." *Id.* ¶18.

As indicated, the proposed Amended Answer adds affirmative defenses of fraud and unclean hands. As to fraud, the Amended Answer provides, ECF 27-1 at 13:

> Mr. Hebbeler and Ms. Hebbeler committed fraud when, among other things, they executed a deed of trust for a loan from the Small Business Administration ("SBA") related to the property located at 106 Hilton Avenue, Catonsville, Maryland 21228 (the "Property") which they did on or about November 5, 2018 even though, by then, the Property had been sold to other persons and that sale had been ratified in the third foreclosure action referenced in Paragraph 22 above. Mr. Hebbeler and Ms. Hebbeler have committed repeated fraud by misrepresenting that they are the owners of the Property when the Property has been sold to others and this sale has been ratified by the Circuit Court for Baltimore County. Mr. Hebbeler and Ms. Hebbeler have made these misrepresentations for the unlawful purpose of obtaining loans that are secured by the Property, which they do not own.

With respect to unclean hands, the Amended Answer states, *id.*:

> Mr. Hebbeler and Ms. Hebbeler have unclean hands because, among other things, they executed a deed of trust for a loan from the SBA related to the Property which they did on or about November 5, 2018 even though, by then, the Property had been sold to other persons and that sale had been ratified in the third foreclosure action referenced in Paragraph 22 above. Mr. Hebbeler and Ms. Hebbeler have unclean hands through misrepresenting that they are the owners of the Property when the Property has been sold to others and this sale has been ratified by the Circuit Court for Baltimore County. Mr. Hebbeler and Ms. Hebbeler have made these misrepresentations for the unlawful purpose of obtaining loans that are secured by the Property, which they do not own.

Additional facts are included in the Discussion.

## II. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 15(a)(1)(A) does not apply here.[4] Notably, Rule 15(a)(2) states, in part: "The court should freely give leave [to amend] when justice so requires." *Id.*

There are three circumstances when it is appropriate to deny leave to amend: "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'There has been bad faith on the part of the moving party;' or (3) 'The amendment would have been futile.'" *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). However, the review for futility "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

Here, the motion for leave was timely filed within the time provided by the Court's Scheduling Order. *See* ECF 24. Because defendant's Motion was timely filed, it is assessed only under Fed. R. Civ. P. 15(a)(2).

---

[4] Rule 15(a)(1)(A) stats that "[a] party may amend its pleading once as a matter of course," if done within 21 days after serving the pleading. Or, "if the pleading is one to which a responsive pleading is required," a party may amend once as a matter of course, provided that it does so within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B).

7

"[A]fter the deadlines provided by a scheduling order have passed, the good cause standard" applicable to modifications of scheduling orders under Fed. R. Civ. P. 16 "must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *see also Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012) (stating that Rule 15(a)(2) "applies . . . prior to the entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment."). But, Rule 16 is not implicated here.

In *Nourison*, 535 F.3d at 298, the Fourth Circuit explained:

> There is tension within the Federal Rules of Civil Procedure between Rule 15(a) and Rule 16(b) amply illustrated by this appeal. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile. *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001). On the other hand, Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge."

### III. Discussion

As mentioned, the Bank seeks to add a seventeenth affirmative defense of fraud and an eighteenth affirmative defense of unclean hands. It also seeks to assert counterclaims against the Hebbelers and a crossclaim against the SBA.

With respect to the Counterclaim, the Hebbelers contend that FMB "attempt[s] to assert causes of actions on behalf of third parties," and thus lacks standing to assert the counterclaims. ECF 28-1 at 1. As a result, the proposed amendments are "futile." *Id.* at 3.

The Bank counters that the Counterclaim is not futile, because defendant "has asserted claims by which it has been damaged[.]" ECF 29 at 2. Specifically, the Counterclaim alleges that the Hebbelers' execution of the Deed of Trust has "created perceived clouds on title and ha[s]

delayed the eviction of the Hebbelers and the ability of the Rhynes to obtain possession of the Property." ECF 27-1, ¶ 10. And, it posits that, "until the issues concerning the SBA loan are resolved," the Bank is unable "to obtain the benefit of the foreclosure sale." ECF 29 at 3 (citing ECF 27-1, ¶¶ 10, 15).

I disagree with plaintiffs that the Counterclaim is futile, as plaintiffs largely misstate defendant's allegations. For example, plaintiffs argue that defendant's counterclaim for breach of contract (Count III) is "inherently futile" because the Deed of Trust is an agreement "between the Hebbelers and a third party," the SBA. ECF 28-1 at 2. But, the Counterclaim does not allege that the Hebbelers breached the Deed of Trust. Rather, the Bank asserts that the Hebbelers breached various contracts between the Hebbelers and the Bank related to the Property by executing a Deed of Trust "which falsely represented that they owned the Property . . . ." ECF 27-1, ¶ 19.

Moreover, plaintiffs fail to address the futility of defendant's request to file a cross claim against the SBA for declaratory relief. *See* ECF 28-1 at 4. Defendant contends that it is necessary to add the SBA as a third party to resolve a dispute concerning any proceeds from the sale of the Property. ECF 29 at 8-9.

As to the fraud defense, plaintiffs assert that the defense is futile because "FMB fails to allege that the Hebbelers made any false statement to FMB, or that FMB even relied upon any false statement by the Hebbelers." ECF 28-1 at 4. This contention is unavailing.

To be sure, the defense is duplicative of the fourth affirmative defense. As FMB acknowledges, FMB "already asserted [in] its fourth affirmative defense that '[t]he claims in the Complaint are barred, in whole or in part, because Plaintiffs engaged in fraud.'" ECF 29 at 9-10. The Bank could have amended its fourth affirmative defense, instead of adding a separate fraud claim. But, this is not grounds to preclude the amendment.

9

Further, plaintiffs contend that the unclean hands defense is not available to FMB, "because it only applies to claims for equitable relief, and the Hebbelers' Complaint asserts actions at law." ECF 28-1 at 5 (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 607 (2d Cir. 2005) ("Aetna asserts an affirmative defense of unclean hands. Unclean hands is an equitable defense to equitable claims. Because the SCA seeks damages in an action at law, Aetna cannot avail itself of unclean hands as a defense.") (citations omitted)). I disagree with plaintiffs. As FMB indicates, the defense of unclean hands applies as a defense "to equitable claims that still exist" in the Complaint, *i.e.*, specifically Count II (detrimental reliance) and Count V (unjust enrichment). ECF 29 at 10.

For these reasons, I shall grant defendant's Motion (ECF 27).

An Order follows, consistent with this Memorandum.

Date: May 17, 2019                                        /s/
                                                                        Ellen L. Hollander
                                                                        United States District Judge